**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| JAMES WALKER, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Cv. No. 14-02021 |
| | ) | Cr. No. 07-20243 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

**ORDER**

Before the Court is James Walker's January 6, 2014 *pro se* motion seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (the "§ 2255 Motion"). (Cv. ECF No. 1 at 1.)[1] Walker challenges his sentence in Criminal Case No. 07-20243.[2] On November 12, 2014, the Court ordered the United States (the "Government") to respond. (Cv. ECF No. 5 at 24.) The Government responded on March 27, 2015. (Cv. ECF No. 11 at 35.)

On October 13, 2015, Walker moved to amend the § 2255 Motion, seeking relief under <u>Johnson v. United States</u>, 135 S.

---

[1] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

[2] References to "07-20243" are to filings in <u>United States v. Walker</u>, Case No. 2:07-cr-20243-SHM-1 (W.D. Tenn.).

Ct. 2551 (2015) ("Johnson").  On October 12, 2016, after Walker

had filed two further motions to amend, the Court ordered the

Government to respond.  (Cv. ECF No. 22 at 112.)  The Government

responded on October 19, 2016.  (Cv. ECF No. 23 at 113.)  Walker

replied on November 7, 2016.  (Cv. ECF No. 26 at 139.)

For the following reasons, the § 2255 Motion is GRANTED in

part and DENIED in part.

## I.  Background

### A.  Conviction, Sentence, and Appeal

On August 14, 2007, a federal grand jury in the Western

District of Tennessee returned a one-count indictment charging

Walker with knowingly possessing ammunition as a convicted

felon, in violation of 18 U.S.C. § 922(g).  (Cr. ECF No. 3 at

3.)  Walker proceeded to trial on February 9, 2010.  (Cr. ECF

No. 79 at 89.)  Following a jury trial, Walker was convicted on

February 11, 2010.  (Id.)

The United States Probation Office prepared a Presentence

Investigation Report (the "PSR").  The PSR stated that Walker

managed a rooming house at 740 Lucy in Memphis, Tennessee, from

which he sold crack cocaine to undercover police officers on

several occasions.  (Id. ¶¶ 5-9.)  On August 1, 2007, officers

with the Memphis Police Department conducted a knock and talk at

740 Lucy following complaints of drug sales.  (Id. ¶ 10.)

Walker answered the door and provided verbal and written consent

for the officers to search his room. (Id.) The search uncovered 0.3 gm of crack cocaine and 13 9mm rounds of ammunition. (Id.) Walker admitted that he had previously been convicted of a felony. (Id. ¶ 11.)[3]

The PSR calculated Walker's guidelines sentencing range pursuant to the 2009 edition of the United States Sentencing Commission Guidelines Manual (the "U.S.S.G."). (Id. at ¶ 16.) Walker was an armed career criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "ACCA"). (Id. ¶ 25.) He had five prior violent-felony convictions. (Id. ¶¶ 31, 33-35, 37.) Walker's guidelines range was 262-327 months in prison. (Id. ¶ 72.) Under the ACCA, Walker's statutory-minimum sentence was 180 months. (Id. ¶ 71.)

On July 14, 2011, the Court sentenced Walker to 180 months, followed by three years' supervised release. (Cr. ECF No. 108.) Judgment was entered on July 21, 2011. (Cr. ECF No. 109 at 146.)

Walker appealed, challenging the Court's denial of a motion for mistrial and contending that his mandatory 180-month sentence was unconstitutional under the Eighth Amendment. United States v. Walker, 506 F. App'x 482, 483 (6th Cir. 2012).

---

[3] At his sentencing hearing, Walker did not object to these facts, and the Court accepted them for sentencing purposes. (Cr. ECF No. 124 at 549-51.)

The Court of Appeals for the Sixth Circuit affirmed Walker's conviction and sentence on November 28, 2012.  Id.

## B.   § 2255 Proceedings

On January 6, 2014, Walker filed the § 2255 Motion, asserting numerous grounds for relief.  Walker argues:

1.   that he was subjected to an illegal, warrantless search, in violation of the Fourth Amendment;

2.   that his trial counsel was ineffective for failing to file a motion to suppress illegally discovered evidence and for failing to request a jury instruction on the "innocent possession" or justification defense;

3.   that his 180-month sentence under the ACCA is cruel and unusual punishment, in violation of the Eighth Amendment; and

4.   that there was insufficient evidence at trial to support a finding of constructive possession of ammunition.

(Cv. ECF No. 1 at 4-13.)

On October 13, 2015, Walker filed a *pro se* Motion for Leave to Amend 2255 Motion (the "First Motion to Amend"), seeking to add two additional grounds for relief:

5.   that, in light of Johnson, he no longer qualifies as an armed career criminal under the ACCA and that his sentence must be set aside; and

6.   that his counsel was ineffective for not challenging his armed-career-criminal designation at the time of his sentencing.

(Cv. ECF No. 13 at 48.)

On June 24, 2016, the Court appointed counsel to represent Walker for purposes of Johnson Review.  (Cr. ECF No. 134 at

4

639.)  On June 27, 2016, Walker filed a Motion to Vacate and Correct Sentence Under 28 U.S.C. § 2255, which the Court construes as a second motion to amend the § 2255 Motion to add grounds for relief under Johnson (the "Second Motion to Amend"). (Cv. ECF No. 16 at 75.)  On August 15, 2016, Walker filed a Motion for Leave to Amend Motion to Vacate and Correct Sentence Under 28 U.S.C. § 2255, which the Court construes as a third motion to amend the § 2255 Motion to add grounds for relief under Johnson (the "Third Motion to Amend").  (Cv. ECF No. 19 at 82.)  On September 19, 2016, the Government responded, stating that it has no objection to the filing of the proposed amendment.  (Cv. ECF No. 21 at 110.)

### C.  Preliminary Matters

For good cause shown, the First, Second, and Third Motions to Amend are GRANTED.

Walker has filed several motions seeking appointment of counsel.  On February 16, 2016, Walker filed a Notice, which the Court construes as a *pro se* Motion to Appoint Counsel (the "First Appointment of Counsel Motion").  (Cv. ECF No. 14 at 71.) On June 13, 2016, Walker filed a Motion for Resentencing and Release with Request for Appointment of Counsel (the "Second Appointment of Counsel Motion").  (Cr. ECF No. 133 at 637.) Because Walker now has Court-appointed counsel, the First

5

Appointment of Counsel Motion and the Second Appointment of
Counsel Motion are DENIED as moot.

## II.  Standard of Review

Walker seeks relief under 28 U.S.C. § 2255.  Under
§ 2255(a),

> [a] prisoner in custody under sentence of a
> court established by Act of Congress
> claiming the right to be released upon the
> ground that the sentence was imposed in
> violation of the Constitution or laws of the
> United States . . . or that the sentence was
> in excess of the maximum authorized by
> law . . . may move the court which imposed
> the sentence to vacate, set aside or correct
> the sentence.

28 U.S.C. § 2255(a).

"To succeed on a § 2255 motion, a prisoner in custody must
show '(1) an error of constitutional magnitude; (2) a sentence
imposed outside the statutory limits; or (3) an error of fact or
law that was so fundamental as to render the entire proceeding
invalid.'"  McPhearson v. United States, 675 F.3d 553, 558–59
(6th Cir. 2012) (quoting Mallett v. United States, 334 F.3d 491,
496–97 (6th Cir. 2003)).

A prisoner must file his § 2255 motion within one year of
the latest of:

(1)  the date on which the judgment of conviction
     becomes final;

(2)  the date on which the impediment to making a
     motion created by governmental action in

> violation of the Constitution or laws of the
> United States is removed, if the movant was
> prevented from making a motion by such
> governmental action;
>
> (3) the date on which the right asserted was
> initially recognized by the Supreme Court, if
> that right has been newly recognized by the
> Supreme Court and made retroactively applicable
> to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim
> or claims presented could have been discovered
> through the exercise of due diligence.

28 U.S.C. § 2255(f).

A § 2255 motion is not a substitute for a direct appeal. Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013). "[C]laims not raised on direct appeal," which are thus procedurally defaulted, "may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003) (citing cases); see also, e.g., Jones v. Bell, 801 F.3d 556, 562 (6th Cir. 2015) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)).

In the procedural-default context, the cause inquiry "'ordinarily turn[s] on whether . . . some objective factor external to the defense impeded counsel's efforts'" to raise the issue on direct appeal. Ambrose v. Booker, 684 F.3d 638, 645 (6th Cir. 2012) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration and ellipses in Ambrose); see also United States v. Frady, 456 U.S. 152, 167–68 (1982) (cause-inquiry

standards in § 2254 cases apply to § 2255 cases).  "[F]or cause
to exist, an 'external impediment, whether it be government
interference or the reasonable unavailability of the factual
basis for the claim, must have prevented petitioner from raising
the claim.'"  Bates v. United States, 473 F. App'x 446, 448–49
(6th Cir. 2012) (quoting McCleskey v. Zant, 499 U.S. 467, 497
(1991)) (emphasis removed).

To show prejudice to excuse default, a petitioner must show
"'actual prejudice' resulting from the errors of which he
complains."  Frady, 456 U.S. at 168; see also Ambrose, 684 F.3d
at 649.

Ineffective assistance of counsel can constitute cause
excusing procedural default.  Where a petitioner claims that a
procedural default occurred due to ineffective assistance of
counsel, "relief under § 2255 [is] available subject to the
standard of Strickland v. Washington, [466 U.S. 668 (1984)]."
Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996); see
also Bell, 801 F.3d at 562.  Ineffective assistance of counsel,
under the Strickland standard, can also serve as an independent
ground for § 2255 relief.  See, e.g., Campbell v. United States,
686 F.3d 353, 357 (6th Cir. 2012).

To establish ineffective assistance of counsel, "[f]irst,
the defendant must show that counsel's performance was
deficient. . . .  Second, the defendant must show that the

deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

To demonstrate deficient performance by counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In considering an ineffective-assistance claim, a court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. . . . The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687, 689).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. "In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted

differently. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Wong v. Belmontes, 558 U.S. 15, 27 (2009); Strickland, 466 U.S. at 693).

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010) (citing Strickland, 466 U.S. at 689, 693).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

Richter, 562 U.S. at 105 (citations omitted).  "Counsel [cannot] be unconstitutionally ineffective for failing to raise . . . meritless arguments."  Mapes v. Coyle, 171 F.3d 408, 427 (6th Cir. 1999).

Alternatively, a petitioner may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence."  Bousley v. United States, 523 U.S. 614, 623–24 (1998).  "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Id. at 623 (quotation marks omitted) (quoting Schlup v. Delo, 513 U.S. 298, 327–28 (1995)).

After a petitioner files a § 2255 motion, the Court reviews it and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."  Rules Governing Section 2255 Proceedings for the U.S. District Courts ("§ 2255 Rules") at Rule 4(b).  "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."  Id. The § 2255 movant is entitled to reply to the government's response.  Id. at Rule 5(d).  The Court may also direct the parties to provide additional information relating to the

motion.  Id. at Rule 7(a).  If the district judge addressing the § 2255 motion is the same judge who oversaw the trial, the judge "'may rely on his or her recollection of the trial'" in denying the motion.  Christopher v. United States, 605 F. App'x 533, 537 (6th Cir. 2015) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)).

## III. Analysis

### A. Timeliness of § 2255 Motion

On November 28, 2012, the Sixth Circuit affirmed Walker's conviction.  Walker, 506 F. App'x 482.  Walker did not seek a writ of certiorari in the U.S. Supreme Court.

For § 2255(f)(1) purposes, "[w]here a defendant pursues direct review but does not seek a writ of certiorari, the conviction becomes final at expiration of the time for seeking such a writ."  Story v. United States, Nos. 2:13-CR-55-JRG-MCLC-1, 2:16-CV-282-JRG, 2016 WL 7077616, at *2 (E.D. Tenn. Dec. 2, 2016) (citing Clay v. United States, 537 U.S. 522, 525 (2003); U.S. Sup. Ct. R. 13(3)).  The deadline for seeking a writ of certiorari from the U.S. Supreme Court is 90 days from the date of the Court of Appeals's decision.  U.S. Sup. Ct. R. 13(3). That deadline was February 26, 2013.  Walker's conviction became final that day.  Walker filed the § 2255 Motion on January 6, 2014, less than a year after his conviction became final.  The § 2255 Motion is timely.

Walker also challenges his sentence based on Johnson, which provides a new rule of constitutional law made retroactively applicable to cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1268 (2016). Johnson was decided on June 26, 2015, and Walker filed the First Motion to Amend on October 13, 2015. Walker filed that motion within one year of Johnson. Walker's § 2255 Motion, as amended, is timely and properly before the Court. See 28 U.S.C. §§ 2255(f)(3).

## B. Fourth Amendment Violations

Walker contends that law enforcement officers violated the Fourth Amendment during the search that led to his arrest. He alleges that, without probable cause, reasonable suspicion that a crime was in progress, or a warrant, officers illegally searched the room where they found Walker at 740 Lucy, which led to discovery of the ammunition that formed the basis of Walker's § 922(g) conviction. Walker alleges that the building at 740 Lucy did not belong to him and that he was visiting as a third party. Walker asserts that, before the search, the officers did not know Walker was a convicted felon or have reason to suspect that Walker was in possession of a gun or ammunition. Walker alleges that the officers found the ammunition in violation of the plain sight rule. (Cv. ECF No. 1 at 4-8.)

Walker cannot assert a free-standing Fourth Amendment claim in collateral proceedings under § 2255. Ray, 721 F.3d at 762.

"[T]he Fourth Amendment exclusionary rule 'is a judicially created remedy rather than a personal constitutional right' whose purpose is 'to safeguard Fourth Amendment rights generally through its deterrent effect.'"  Id. (quoting Kimmelman v. Morrison, 477 U.S. 365, 376 (1986)).  "It is, thus, a structural remedy designed to exclude evidence so as to deter police misconduct, not to 'redress the injury to the privacy of the victim of the search or seizure.'"  Id. (quoting Stone v. Powell, 428 U.S. 465, 486 (1976)).  Although "the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue," absent a showing that Walker did not have "an opportunity for full and fair litigation of [his Fourth Amendment] claim at trial and on direct appeal," Walker's claim is not cognizable under a § 2255 motion.  Id.

Walker has not shown that he was denied an opportunity for full and fair litigation of his Fourth Amendment claim at trial and on direct appeal.  The § 2255 Motion is DENIED on this ground.

### C.  Ineffective Assistance of Trial Counsel

Walker alleges that his trial counsel was ineffective (1) for failing to file a motion to suppress evidence of the ammunition found in Walker's possession and (2) for failing to

request a jury instruction on the "innocent possession" or justification defense.

## 1.    Failure to File Motion to Suppress

Walker's trial counsel did not file a motion to suppress evidence found during the search.  (Cv. ECF No. 8 at 30.)  In a sworn affidavit, trial counsel states:

> Based on the discovery received from the Government, the review of the discovery with Mr. Walker and the conversations with Mr. Walker surrounding the incident, it was determined that a motion to suppress was unwarranted because Mr. Walker gave the officers consent to search the residence.  So, while the officers did not have a warrant to search the rooming house at 740 Lucy, no warrant was necessary when consent to search was provided by Mr. Walker.

(Id.)  The Government argues that, because Walker gave the officers consent to search the room Walker was occupying, Walker's ineffective assistance claim on this ground is meritless.  (Cv. ECF No. 11 at 39-42.)

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Warrantless searches and seizures "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967).  One exception is a search conducted with a person's free and voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 248 (1973); United

States v. Carter, 378 F.3d 584, 587 (6th Cir. 2004). "Consent to a search may be in the form of words, gesture, or conduct." Carter, 378 F.3d at 587 (quotation marks omitted). The Government must prove that consent was "freely and voluntarily given," and "consent must be proved by clear and positive testimony." United States v. Scott, 578 F.2d 1186, 1188 (6th Cir. 1976).

Trial testimony showed that several law enforcement officers arrived at 740 Lucy, following up on information about drug activity provided by an undercover officer. (Cr. ECF No. 121 at 237.) The officers went to the front of the building, a multi-apartment rooming house, entered the main door, and knocked on the first door on the left. (Cr. ECF No. 122 at 327.) After Walker answered, they identified themselves as police officers with the Memphis Police Department. The officers asked if they could enter, and Walker allowed them in. (Id. at 327-28.)

One officer testified that, on entering, he saw some crack cocaine and a box containing ammunition on a dresser in the room. (Id. at 328-29.) He testified that, based on his training and experience, he asked Walker if he had any weapons in the room and that Walker said he did not. (Id. at 329.) The officer testified that he asked Walker if "he'd mind if [they] looked around his room" and Walker answered that he did not.

(Id.)  The officer testified that he presented Walker with a consent-to-search form and advised Walker of the form and what the officers planned to do.  (Id.)  After Walker had signed the form, the officers searched the room.  (Id.)  The officers seized the crack cocaine and ammunition and placed Walker under arrest.  (Id. at 335.)

The evidence shows that Walker's consent was freely and voluntarily given.  He does not allege the contrary.  Because Walker consented to the search, the search did not violate the Fourth Amendment.  A motion to suppress evidence found during the search would have been meritless.  Walker's trial counsel was not ineffective for failing to file a motion to suppress. The § 2255 Motion is DENIED on this ground.

### 2. Failure to Request Jury Instruction

Walker's trial counsel did not request an "innocent possession"-defense jury instruction.  (Cv. ECF No. 8 at 31.) In a sworn affidavit, trial counsel states:

> Based on the facts as I knew them to be in Mr. Walker's case, we could not overcome the preponderance burden which would warrant the rarely given jury instruction.  There was no unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury.  Mr. Walker was not under attack by or from anyone.

(Id.)  The Government argues that because Walker was never under an unlawful or present threat, Walker's ineffective assistance claim on this ground is meritless.  (Cv. ECF No. 11 at 43.)

In felon-in-possession cases under 18 U.S.C. § 922(g), "a defense of justification may arise in rare situations."  United States v. Singleton, 902 F.2d 471, 472 (6th Cir. 1990).  To establish this defense, a defendant must show:

> (1)  that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2)  that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3)  that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and
>
> (4)  that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

Id. (alterations, citations, and quotation marks omitted).  A defendant must also "show that he did not maintain possession any longer than absolutely necessary."  Id. at 473.

Walker argues that his counsel should have requested an "innocent possession"-defense jury instruction because: (a) there was no firearm present; (b) Walker did not live at the residence and was not aware that the ammunition was in the room;

(c) he was not at the residence for long; (d) he did not intend to illegally possess the ammunition; and (e) the officers did not have any suspicion that ammunition was present or that he knew it was present. (Cv. ECF No. 1 at 10.)

Walker does not assert that he faced any "unlawful and present, imminent, and impending threat" of death or serious bodily injury that would have warranted his possession of the ammunition. See Singleton, 902 F.2d at 472. Because Walker did not face any impending threat of death or serious bodily injury, he has not shown that a justification-defense jury instruction was warranted. A request for such a jury instruction would have been meritless. Walker's trial counsel was not ineffective for not asking for that instruction. The § 2255 Motion is DENIED on this ground.

### D.    Eighth Amendment Violation

Walker contends that his 180-month sentence violates the Eighth Amendment. Walker argues there was a lack of evidence supporting the elements of intent, knowledge, and possession necessary to establish a felon-in-possession offense. Walker further argues that "bullets are harmless when there is not a firearm present." (Cv. ECF No. 1 at 13.)

"[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change

in the law." Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999). Walker challenged his 180-month sentence on Eighth Amendment grounds on direct appeal. Walker, 506 F. App'x at 489-90. The court of appeals rejected both Walker's categorical and proportionality challenges to his sentence. Id.

Walker does not allege highly exceptional circumstances that warrant reconsideration of this issue. He cites no intervening change in the law. The § 2255 Motion is DENIED on this ground.

**E. Insufficiency of Evidence of Constructive Possession**

Walker challenges the sufficiency of the evidence supporting a finding that he constructively possessed the ammunition. (Cv. ECF No. 1 at 13.)

Walker procedurally defaulted his sufficiency-of-the-evidence claim by failing to raise it on direct appeal. The Sixth Circuit has "repeatedly held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding." United States v. Osborn, 415 F.2d 1021, 1024 (6th Cir. 1969). The § 2255 Motion is DENIED on this ground.

**F. Johnson Challenge**

**1. Propriety of Merits Review**

Walker's Johnson challenge alleges constitutional error that resulted in a sentence that now exceeds the statutory

limits applicable to his offense. See McPhearson, 675 F.3d at 559. The Government does not argue that Walker's Johnson challenge is procedurally defaulted. Walker did not challenge his ACCA sentencing enhancement on direct appeal. Courts that have considered procedural-default challenges to prisoners' Johnson-based § 2255 motions have consistently ruled that cause and prejudice excuse a prisoner's procedural default in the Johnson context. E.g., Duhart v. United States, No. 08-60309-CR, 2016 WL 4720424, at *4 (S.D. Fla. Sept. 9, 2016) ("Where the Supreme Court explicitly overrules well-settled precedent and gives retroactive application to that new rule after a litigant's direct appeal, '[b]y definition' a claim based on that new rule cannot be said to have been reasonably available to counsel at the time of the direct appeal." (quoting Reed v. Ross, 468 U.S. 1, 17 (1984))).

Because the Court considers Walker's Johnson challenge on the merits, it need not address Walker's ineffective-assistance claim based on his counsel's failure to challenge Walker's armed career criminal designation at the time of his sentencing. Walker's Johnson-based ineffective-assistance claim is DENIED as moot.

## 2. ACCA's "Violent Felony" Framework

Under the ACCA, a defendant convicted under 18 U.S.C. § 922(g) who has three prior convictions for violent felonies or

serious drug offenses is subject to a mandatory minimum sentence of 180 months in prison. 18 U.S.C. § 924(e). Without the prior qualifying convictions, a defendant convicted under § 922(g) is subject to a statutory maximum sentence of 120 months in prison. 18 U.S.C. § 924(a)(2).

The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (a) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force clause"); (b) "is burglary, arson, or extortion, [or] involves use of explosives" (the "enumerated-offenses clause"); or (c) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).

In Johnson, the Supreme Court held that a sentence imposed under the residual clause of the ACCA violates due process. 135 S. Ct. at 2563. In Welch, the Supreme Court applied its holding in Johnson retroactively to ACCA cases on collateral review. 136 S. Ct. at 1268. See also In re Watkins, 810 F.3d 375, 383-84 (6th Cir. 2015) (same).

Johnson does not question sentencing enhancements under the ACCA's use-of-force or enumerated-offenses clauses. Johnson, 135 S. Ct. at 2563. "The government accordingly cannot enhance [a defendant's] sentence based on a prior conviction that

constitutes a violent felony pursuant only to the residual clause." United States v. Priddy, 808 F.3d 676, 683 (6th Cir. 2015). "But a defendant can still receive an ACCA-enhanced sentence based on the statute's use-of-force clause or enumerated-offense[s] clause." Id.

"When determining which crimes fall within . . . the violent felony provision" of the ACCA, "federal courts use the categorical approach." United States v. Covington, 738 F.3d 759, 762 (6th Cir. 2013) (quotation marks omitted).[4] Using that approach, courts "look[] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor v. United States, 495 U.S. 575, 600 (1990).

"[T]here are two steps in applying the categorical approach to determine whether a prior conviction constitutes . . . a violent felony under the ACCA." Covington, 738 F.3d at 763. "First, a court must ask whether the statute at issue is divisible by determining if the statute lists 'alternative elements.'" Id. (quoting Descamps v. United States, 133 S. Ct. 2276, 2293 (2013)). "[A] divisible statute, listing potential offense elements in the alternative, renders opaque which

---

[4] Covington addresses the definition of "crime of violence" in U.S.S.G. § 4B1.2(a). 738 F.3d at 761-62. Guidelines decisions are applicable to ACCA cases because, "[w]hether a conviction is a 'violent felony' under the ACCA is analyzed in the same way as whether a conviction is a 'crime of violence' under . . . § 4B1.2(a)." United States v. McMurray, 653 F.3d 367, 371 n.1 (6th Cir. 2011).

element played a part in the defendant's conviction." Descamps,
133 S. Ct. at 2283.

If a statute is divisible, meaning that it "comprises
multiple, alternative versions of the crime," a court uses a
"modified categorical approach" and may "examine a limited class
of documents," such as the indictment and jury instructions, "to
determine which of a statute's alternative elements formed the
basis of the defendant's prior conviction."[5]   Id. at 2283-84.
"Where the defendant has pled guilty, these so-called Shepard
documents may include the 'charging document, written plea
agreement, transcript of plea colloquy, and any explicit factual
finding by the trial judge to which the defendant assented.'"
United States v. Denson, 728 F.3d 603, 608 (6th Cir. 2013)
(quoting Shepard v. United States, 544 U.S. 13, 16 (2005)).
"[T]he question is whether the court documents establish that
the defendant necessarily admitted the elements of a predicate

---

[5]  In United States v. Mitchell, the court explained that "[a] divisible
statute is necessary but not sufficient for application of the modified
categorical approach."   743 F.3d 1054, 1063 (6th Cir. 2014).   The court
further explained, "We make explicit a step in the analysis that the
Covington panel alluded to implicitly: if a statute is divisible—in that it
sets out one or more elements of the offense in the alternative—at least one,
but not all of those alternative elements must depart from: (1) the elements
of the generic ACCA crime (if the conviction is based on an enumerated
offense); or (2) the definitions provided in . . . the 'use of physical
force' clause . . . (if the conviction is based on a non-enumerated
offense)."   Id. at 1065.   The comments in Mitchell appear to be dicta.   The
Court need not determine whether this portion of Mitchell controls because,
as discussed below, the Tennessee third degree burglary and Texas robbery
statutes under which Walker was convicted each included at least one
alternative element that departed from the definition in the ACCA's use-of-
force and enumerated-offenses clauses.

24

offense through his plea." United States v. McMurray, 653 F.3d 367, 377 (6th Cir. 2011) (quotation marks omitted).

The Supreme Court has clarified that a court should use the modified categorical approach only when a statute "lists multiple elements disjunctively," not when it "enumerates various factual means of committing a single element." Mathis v. United States, 136 S. Ct. 2243, 2249, 2256 (2016). A "court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means." Id. at 2256. It can do so by examining state law to determine (a) whether "a state court decision definitively answers the question," or (b) whether "the statute on its face . . . resolve[s] the issue." Id. Alternatively listed items are elements where they "carry different punishments" or where the statute "itself identif[ies]" them as "things [that] must be charged." Id. They are means where the "statutory list is drafted to offer 'illustrative examples'" only. Id. "[I]f state law fails to provide clear answers," a court may take "a peek at the record documents" of the prior conviction "for the sole and limited purpose of determining whether the listed items are elements of the offense." Id. (alterations and quotation marks omitted). If the listed items are "means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." Id.

After having determined which of a statute's alternative elements formed the basis of the defendant's prior conviction, or after having determined that the statute is indivisible, the second step in the categorical approach requires the court to "ask whether the offense the statute describes, as a category, is a [violent felony]." Covington, 738 F.3d at 763.

"When determining whether a particular offense qualifies as a 'violent felony' under the use-of-force clause, [a court is] limited to determining whether that offense 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" Priddy, 808 F.3d at 685 (quoting 18 U.S.C. § 924(e)(2)(B)(i)). "The force involved must be 'violent force -- that is, force capable of causing physical pain or injury to another person.'" Id. (quoting Johnson v. United States, 559 U.S. 133, 140 (2010) ("Johnson 2010")).

When determining whether a particular offense qualifies as a violent felony under the enumerated-offenses clause, the "question is whether the elements of the prior conviction are equivalent to the elements of the generic definition of one of the offenses enumerated in . . . [§] 924(e)(2)(B)(ii)." Covington, 738 F.3d at 764. "The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." Descamps, 133 S. Ct. at 2281.

"If the offense 'sweeps more broadly' and 'criminalizes a broader swath of conduct' than [would] meet these tests, then the offense, as a category, is not a [violent felony]." Covington, 738 F.3d at 764 (quoting Descamps, 133 S. Ct. at 2281, 2283, 2289-91).

### 3. Analysis of Walker's Previous Convictions

The Government contends that four of the five previous convictions identified as ACCA predicates in Walker's PSR remain qualifying convictions after Johnson. (Cv. ECF No. 23 at 116-28.)  They are: (1) a 1974 Tennessee conviction for robbery with a deadly weapon; (2) a 1982 Texas conviction for robbery; (3) a 1986 Tennessee conviction for third-degree burglary; and (4) a 1994 Tennessee conviction for robbery. (PSR ¶¶ 31, 33, 35, 37.) The Government concedes that Walker's 1983 Tennessee conviction for attempted third-degree burglary does not qualify as an ACCA predicate after Johnson. (Cv. ECF No. 23 at 128; see PSR ¶ 34.)

### a. Tennessee Robbery Convictions

Walker concedes that the Sixth Circuit has held, post-Johnson, that a Tennessee robbery conviction is a violent felony under the ACCA's use-of-force clause. (Cv. ECF No. 19 at 91.) In United States v. Taylor, the Sixth Circuit affirmed the continued vitality post-Johnson of United States v. Mitchell, 743 F.3d 1054 (6th Cir. 2014), which held that Tennessee robbery (substantially the same version of the robbery statute as the

statute under which Walker was convicted) is categorically a violent felony under the ACCA's use-of-force clause. 800 F.3d 701, 718-19 & n.5 (6th Cir. 2015). In United States v. Johnson, the Sixth Circuit held that Tennessee robbery with a deadly weapon (again, substantially the same version of the robbery statute as the statute under which Walker was convicted) is also categorically a violent felony under the ACCA's use-of-force clause. 530 F. App'x 528, 533 (6th Cir. 2013) (citing United States v. Gloss, 661 F.3d 317 (6th Cir. 2011)).

To preserve the issue for appellate review, Walker argues that a circuit split in post-Johnson analyses of robbery convictions under various states' robbery statutes calls into question the continued validity of the Sixth Circuit's decision in Taylor. (Cv. ECF No. 19 at 91-93.) However, "[a] published prior panel decision" by the Sixth Circuit "'remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Sixth Circuit] sitting en banc overrules the prior decision.'" Rutherford v. Columbia Gas, 575 F.3d 616, 619 (6th Cir. 2009) (quoting Salmi v. Sec'y of Health & Human Servs., 774 F.2d 685, 689 (6th Cir. 1985)). The Court must follow Mitchell, Taylor, and other Sixth Circuit decisions classifying Tennessee's robbery statutes under the ACCA. Both Walker's 1974 Tennessee conviction for robbery with a deadly weapon and his 1994

Tennessee conviction for robbery remain violent felonies under the ACCA after <u>Johnson</u>.

**b.  Tennessee Third-Degree Burglary Conviction**

At the time of the offense conduct on which Walker's 1986 third-degree burglary conviction was based, Tenn. Code Ann. § 39-3-404 provided:

> (a)(1)   Burglary in the third degree is the breaking and entering into a business house, outhouse, or any other house of another, other than dwelling house, with the intent to commit a felony.
>
> (2)   Every person convicted of this crime, on first offense, shall be imprisoned in the penitentiary for not less than three (3) years nor more than then (10) years.
>
> . . . .
>
> (b)(1)   Any person who, with intent to commit crime, breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by any means, shall be punished by imprisonment for a term of not less than three (3) nor more than twenty-one (21) years upon conviction for a first offense, and not less than five (5) years nor more than twenty-one (21) years upon conviction for a second or subsequent offense.
>
> . . . .

Tenn. Code Ann. § 39-3-404 (1982) (repealed) (additional penalty provisions omitted). Section 39-3-404(a)(1) -- the "building provision" -- criminalized the breaking and entering into a non-dwelling house, and § 39-3-404(b)(1) -- the "safecracking

provision" -- criminalized the opening or attempted opening of a vault, safe, or other secure place following a breaking and entering into a building.

In United States v. Caruthers, the Sixth Circuit addressed whether a defendant's previous conviction under § 39-3-404 qualified as a violent felony under the ACCA's enumerated-offenses clause. 458 F.3d 459, 475-76 (6th Cir. 2006). The court determined that § 39-3-404 is "nongeneric along the 'building or structure' dimension, as it permitted third-degree burglary convictions for unlawful entry into coin receptacles and the like." Id. (citing Fox v. State, 383 S.W.2d 25, 27 (Tenn. 1964)). To use current terminology, § 39-3-404 "criminaliz[ed] a broader swath of conduct than" generic burglary. Descamps, 133 S. Ct. at 2281.

Having determined that § 39-3-404 is "nongeneric," the Caruthers court considered whether the defendant "actually committed a generic burglary" as demonstrated by the available Shepard documents for his § 39-3-404 conviction. Caruthers, 458 F.3d at 476 (quoting Taylor, 495 U.S. at 600). Because the defendant's indictments showed that "he was actually convicted of burglarizing buildings, even though the statute permitted convictions for burglary of non-buildings," Caruthers held that the defendant's § 39-3-404 convictions were for "generic burglaries" and qualified as ACCA predicates. Id.

Caruthers was decided before Descamps, in which the Supreme Court clarified that its "decisions authorize review of [Shepard] documents only when a statute defines burglary not . . . overbroadly, but instead alternatively." Descamps, 133 S. Ct. at 2286.

Following Descamps and Mathis, Walker contends that, not only is § 39-3-404 nongeneric or overbroad, as held by Caruthers, but it is also "indivisible, because the various locations where the offense can take place merely provide different means of committing the same offense." (Cv. ECF No. 19 at 91 (citing Mathis, 136 S. Ct. at 2255).) Walker argues that, because § 39-3-404 is both overbroad and indivisible -- the latter condition precluding any examination of Shepard documents -- his § 39-3-404 conviction cannot qualify as an ACCA predicate. (Id.) The Government argues that § 39-3-404 is divisible because it contains alternative elements, not means, and that the Court may examine Shepard documents to determine which alternative elements formed the basis of Walker's conviction. (Cv. ECF No. 23 at 119.)

Section 39-3-404 as a whole is overbroad, as recognized by Caruthers. Nevertheless, § 39-3-404 is divisible. Section 39-3-404 on its face reflects a divisible structure: § 39-3-404(a)(1) criminalized the burglarizing of buildings other than dwellings, and § 39-3-404(b)(1) criminalized the burglarizing of

31

vaults, safes, etc. (otherwise known as safecracking). Tennessee courts recognized that § 39-3-404 criminalized multiple alternative offenses, not a single offense that could be committed in multiple ways. E.g., Englett v. State, No. 01-C-019103CC00086, 1991 WL 255894, at *2 (Tenn. Crim. App. Dec. 5, 1991) ("As to the burglary and safecracking charges, both of these offenses were prohibited at that time by Tenn. Code Ann. § 39-3-404.").[6] Offenses under §§ 39-3-404(a)(1) and (b)(1) also carried different punishments. Tenn. Code. Ann. §§ 39-3-404(a)(2)-(4), (b)(1)-(2). Both the text of § 39-3-404 and Tennessee case law construing it exhibit Mathis's hallmarks of divisibility. Mathis, 136 S. Ct. at 2256.

Because § 39-3-404 is divisible, the Court may examine Shepard documents to determine which of § 39-3-404's alternative elements formed the basis of Walker's prior conviction. See Descamps, 133 S. Ct. at 2283-84.

Walker's Shepard documents demonstrate that he was convicted under § 39-3-404(a)(1), the building provision, not under § 39-3-404(b)(1)'s safecracking provision. In April 1985,

---

[6] Although some Tennessee decisions treat the safecracking provision as a sentencing enhancement, see, e.g., State v. Lindsay, 637 S.W.2d 886, 890 (Tenn. Crim. App. 1982) (construing a substantially similar prior version of § 39-3-404), that does not mean that § 39-3-404 as a whole merely "enumerate[d] various factual means of committing a single element" such as a single "locational element," Mathis, 136 S. Ct. at 2249-50. Even if understood as a sentencing enhancement, the safecracking provision "provide[d] for greater punishment if the burglar open[ed] a vault, safe, or other secure place after entry," which assumed that a "burglarious entry" had already occurred. Lindsay, 637 S.W.2d at 890. Section § 39-3-404(b)(1) criminalized distinct, additional conduct that § 39-3-404(a)(1) did not.

a Tennessee grand jury charged that Walker, on December 13, 1984, "did commit the offense of burglary in the 3rd degree by unlawfully, feloniously and burglariously breaking into and entering THE BUSINESS HOUSE OF MEN'S WORLD FASHIONS . . . with intent unlawfully, feloniously and burglariously to steal, take and carry away the personal property therein." (Cv. ECF No. 23-1 at 131-32.) Walker's record of judgment shows that he pled guilty to this charged offense. (Id. at 133.)

Having confirmed that Walker was convicted under § 39-3-404's building provision, the Court must determine whether a burglary offense under that provision, as a category, is a violent felony.[7] See Covington, 738 F.3d at 763. The Government contends that it is.

At the time of Walker's conviction, a third-degree burglary conviction under § 39-3-404's building provision required the

---

[7] Although the Court may examine the Shepard documents for Walker's § 39-3-404 conviction to determine which of the statute's alternative offenses formed the basis of that conviction, the Court may not examine the Shepard documents to determine whether the factual basis for that conviction amounts to generic burglary. Thus, the Court may not conclude that Walker's § 39-3-404(a)(1) offense qualifies as an ACCA predicate because the indictment alleged that a building, in fact, was burglarized. Sixth Circuit decisions have previously endorsed that kind of fact-based analysis. See, e.g., Caruthers, 458 F.3d 474-76 (analyzing a pre-1989 Tennessee third-degree burglary offense); Taylor, 800 F.3d at 719-720 (endorsing, in dicta, Caruthers's method of analysis of a pre-1989 Tennessee third-degree burglary offense). Mathis, however, rules out such a fact-based approach. See 136 S. Ct. at 2251 ("How a given defendant actually perpetrated the crime -- what we have referred to as the 'underlying brute facts or means' of commission -- makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence." (citation omitted)); see also United States v. Simmons, No. 3:13-cr-00066, at *6-7 (M.D. Tenn. July 21, 2016) ("While the Sixth Circuit in both Caruthers and Taylor looked at the underlying charging documents to determine whether the defendant 'actually committed a generic burglary' Mathis now forecloses that approach." (citation omitted)).

state to prove four elements: "(1) the breach, (2) the entry, (3) any house of another other than dwelling house, and (4) felonious intent." <u>Petree v. State</u>, 530 S.W.2d 90, 94 (Tenn. Crim. App. 1975); <u>see also</u> <u>Duchac v. State</u>, 505 S.W.2d 237, 239 (Tenn. 1973) (same).[8] The Sixth Circuit has noted that, under § 39-3-404, the entry must be unlawful. <u>Caruthers</u>, 458 F.3d at 475. In <u>Taylor</u>, the Supreme Court defined generic burglary for purposes of the ACCA's enumerated-offenses clause as "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U.S. at 599. By criminalizing the unlawful entry into a non-dwelling "house" (i.e., a building or structure) with intent to commit a felony, the text of § 39-3-404's building provision appears to have criminalized conduct constituting an ACCA predicate under the enumerated-offenses clause.

Tennessee case law, however, shows that § 39-3-404's building provision is overbroad. In <u>Fox</u>, the Tennessee Supreme Court addressed whether a third-degree burglary conviction could be sustained where a defendant lawfully entered a public phone booth, but broke and opened a coin receptacle inside the phone

---

[8] <u>Petree</u> and <u>Duchac</u> addressed Tennessee third-degree burglary under previously styled Tenn. Code Ann. § 39-904, which, as discussed below, had identical language, in relevant respects, to Tenn. Code Ann. § 39-3-404. <u>See</u> <u>Petree</u>, 530 S.W.2d at 94; <u>Duchac</u>, 505 S.W.2d at 239.

booth. 214 S.W.2d at 26-27. At the time, Tenn. Code Ann. § 39-904, a predecessor version of § 39-3-404, provided: "Burglary in the third degree is the breaking and entering into a business house, outhouse, or any other house of another, other than dwelling-house, with the intent to commit a felony" ("§ 39-904's building provision"). Tenn. Code Ann. § 39-904 (1955) (effective Jan. 1, 1956) (repealed). Section 39-904 also provided: "Any person who, with intent to commit crime, breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by any means, shall be punished . . . ." ("§ 39-904's safecracking provision"). See Public Acts of 1955, ch. 321, 1188.[9] Fox held that the "[d]efendants could lawfully enter the telephone booth, which is a business house within the meaning of Section 39-904, but by breaking into the money receptacle after lawful entry they would be guilty of burglary in the third degree." 214 S.W.2d at 27.

Although § 39-904 included a safecracking provision, Fox's holding does not rely on or discuss it. Section 39-904's

_____

[9] Section 39-904's safecracking provision does not appear in the 1955 edition of the Code. The 1955 edition of the Code was enacted on February 2, 1955. Public Acts of 1955, ch. 6, 53-54. Section 39-904's safecracking provision was enacted on March 18, 1955. Public Acts of 1955, ch. 321, at 1188 (amending § 10913, a predecessor version of § 39-904 (see Tenn. Code Ann. at 909, 970 (2009) (showing that § 10913 of the 1932 Code became § 39-904 of the 1955 Code))). Section 39-904's safecracking provision took effect immediately upon its passage and was incorporated into § 39-904 thereafter. See State ex rel. Wooten v. Bomar, 352 S.W.2d 5, 5-6 (Tenn. 1961) (discussing the addition of § 39-904's safecracking provision to § 39-904).

safecracking provision criminalized the opening or attempted opening of "any vault, safe, or other secure place" after first "break[ing] and enter[ing] . . . any building," but the defendants in Fox had not broken and entered into the phone booth itself.  Fox, 383 S.W.2d at 27.  In holding that the defendants' conduct, opening a coin receptacle after having lawfully entered a public phone booth, violated § 39-904's building provision, Fox relied on the reasoning of Page v. State, 98 S.W.2d 98 (Tenn. 1936).  Id.

In Page v. State, the Tennessee Supreme Court addressed whether a burglary conviction could be sustained where the defendant was lawfully inside a "business house," but broke and entered into a room within the business house.  98 S.W.2d at 98-99.  The Page defendants had lawfully been inside a hotel, but broke into the hotel auditor's office and stole personal property.  Id. at 98.  They had not broken and entered into the hotel building itself.

Tennessee's burglary statute applying to dwellings, then § 10910, had a corresponding provision, § 10911, that criminalized the breaking of the "premises, or any safe or receptacle therein" even without a breaking into the dwelling itself.  See Tenn. Code Ann. §§ 10910-11 (1932) (repealed).[10]

---

[10]  Section 10910 provided: "Burglary is the breaking and entering into a dwelling house, by night, with intent to commit a felony."  Section 10911 provided: "Any person who, after having entered upon the premises mentioned

The court explained that one could be convicted of "technical burglary," as defined in § 10910, "if, though lawfully in a dwelling house in the first instance, he breaks and enters into a room of such premises with intent to commit a felony." Page, 98 S.W.2d at 98-99. Although Tennessee's burglary statute applicable to non-dwellings, then § 10913, did not have a corresponding provision that criminalized the breaking of the "premises, or any safe or receptacle therein" without a breaking into the non-dwelling itself, see Tenn. Code Ann. §§ 10910-19, Page concluded that, "[u]pon the same reasoning, one, although lawfully in a business house, commits the offense described in section 10913 of the Code when he breaks and enters into a room of that business house, which he has no right to enter, for the purpose of committing a felony." 98 S.W.2d at 99.

Just as Page applied § 10911, or its principle, to § 10913, Fox reasoned that "Section 39-902 [formerly, § 10911], or at least the same principle, applie[d] also to Section 39-904." Fox, 214 S.W.2d at 26-27. Fox concluded:

> The holding in the Page case applies to the facts in this case. Defendants could lawfully enter the telephone booth, which is a business house within the meaning of Section 39-904, but by breaking into the money receptacle after lawful entry they would be guilty of burglary in the third degree.

Id. at 27.

in the foregoing section, with intent to commit a felony, shall break any such premises, or any safe or receptacle therein, shall receive the same punishment as if he had broken into the premises in the first instance."

In <u>Heald v. State</u>, the Tennessee Court of Criminal Appeals was asked to overrule <u>Fox</u>'s holding "that the fact that a telephone booth was open to the public and hence lawfully entered did not prevent one breaking into the money receptacle from being guilty of third degree burglary." 472 S.W.2d 242, 243 (Tenn. Crim. App. 1970). <u>Heald</u> declined, opining, "We, being an intermediate appellate court, have no authority to overrule a clear and controlling authority promulgated by our Supreme Court." <u>Id.</u>

By the time of Walker's 1986 third-degree burglary conviction, § 39-904's building and safecracking provisions had been restyled as §§ 39-3-404(a)(1) and (b)(1) respectively. Although restyled, the offense-conduct language remained the same. In <u>Caruthers</u>, the Sixth Circuit concluded that § 39-3-404 as a whole was overbroad or "nongeneric" because "it permitted third-degree burglary convictions for unlawful entry into coin receptacles and the like." 458 F.3d at 476 (citing <u>Fox</u>, 214 S.W.2d at 27). <u>Fox</u> was a building-provision case, not a safecracking-provision case. <u>Fox</u> has never been overruled. <u>Caruthers</u>'s holding that § 39-3-404 is overbroad because of <u>Fox</u> is binding on the Court. <u>Fox</u> makes § 39-3-404(a)(1) overbroad.

In support of its position that § 39-3-404(a)(1) is not overbroad post-<u>Mathis</u>, the Government cites <u>Harvey v. United States</u>, Nos. 1:11-CR-43-CLC-SKL-1, 1:13-CV-246-CLC (E.D. Tenn.

Sept. 28, 2016). <u>Harvey</u> concluded that a defendant's convictions for third degree burglary under § 39-904 and § 39-3-404 qualified as ACCA predicates where his PSR showed that his "convictions involved breaking and entering into residences or businesses, not 'vault[s], safe[s], or other secure place[s].'" <u>Id.</u> at *8-9 (alterations in original). <u>Harvey</u> did not address whether § 39-904 and § 39-3-404 -- specifically, those statutes' building provisions -- were overbroad because of <u>Fox</u>. <u>See also, e.g.,</u> <u>Norwood v. United States</u>, Nos. 3:04-CR-141-TAV-HBG-1, 3:16-cv-601-TAV, 2016 WL 6892748, at *3 (E.D. Tenn. Nov. 22, 2016) (same). <u>But see</u> <u>United States v. Simmons</u>, No. 3:13-cr-00066, at *6-7 (M.D. Tenn. July 21, 2016) (concluding that a conviction under § 39-3-404(a)(1) does not qualify as an ACCA predicate following <u>Mathis</u>).

Because § 39-3-404(a)(1) could be violated where the "entry into, or remaining in, a building or structure" was lawful, a § 39-3-404(a)(1) offense is broader than generic burglary. Walker's 1986 Tennessee conviction for third-degree burglary is no longer a violent felony under the ACCA after <u>Johnson</u>.[11]

---

[11] Walker argues that § 39-3-404(a)(1) is overbroad for other reasons, but those arguments lack merit. He argues that Tennessee decisions have held that a "breaking" can consist of merely raising a door latch or opening a shut door. (Cv. ECF No. 26 at 141.) Nothing in <u>Taylor</u>'s definition of generic burglary requires a violent breaking. Under <u>Taylor</u>, generic burglary is accomplished by means of an unlawful "entry into, or **remaining in**" a building or structure, which requires no actual breaking at all. 495 U.S. at 599 (emphasis added).

## c.  Texas Robbery Conviction

At the time of the offense conduct on which Walker's 1982 robbery conviction was based, Texas Penal Code § 29.02 provided:

> (a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he:
>
> > (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
> >
> > (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Tex. Penal Code § 29.02 (1974).  The Texas Penal Code further provided, "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." Tex. Penal Code § 29.01.[12]  Robbery is not a felony listed in the ACCA's enumerated-offenses clause.  See 18 U.S.C.

---

Walker also argues that Tennessee decisions have held that third-degree burglary can be committed when one merely breaks and enters a room within a building even though the initial entry into the building did not require a breaking.  (Cv. ECF No. 26 at 142.)  In United States v. Jones, the Sixth Circuit held that an offense under Tennessee's pre-1989 second-degree burglary statute is categorically a violent felony under the ACCA even though that statute applied to both buildings and rooms within buildings.  673 F.3d 497, 505 (6th Cir. 2012).

Walker also argues that it is unclear whether, under Tennessee law, the unlawful entry and felonious intent had to occur simultaneously, which Walker argues is required under Taylor's definition of generic burglary.  (Cv. ECF No. 26 at 142.)  In affirming defendants' convictions for third-degree burglary, Tennessee appellate courts have routinely explained that those convictions could be affirmed because, inter alia, the unlawful entry and felonious intent had occurred simultaneously.  E.g., Duchac, 505 S.W.2d at 240; Hindman v. State, 384 S.W.2d 18, 20 (Tenn. 1964); Petree v. State, 530 S.W.2d at 94.

[12] Sections 29.01 and 29.02 remain unchanged in relevant respects.

§ 924(e)(2)(B)(ii).  The Sixth Circuit has not addressed whether a conviction under § 29.02 qualifies as a violent felony under the ACCA's use-of-force clause.

Section 29.02 is a divisible statute that criminalizes separate crimes: (a) robbery with bodily injury, and (b) robbery by threats or fear.  E.g., Walton v. State, 575 S.W.2d 25, 25 n.1 (Tex. Crim. App. 1978) (reciting the elements for each offense).  Section 29.02 as a whole is overbroad because it authorizes convictions based on reckless conduct.  See Tex. Penal Code § 29.02(a)(1).  In McMurray, the Sixth Circuit "conclude[d] that the 'use of physical force' clause of the ACCA, § 924(e)(2)(B)(i), requires more than reckless conduct." 653 F.3d at 375.

The Government argues that, because § 29.02 "is divisible on its face," distinguishing between § 29.02(a)(1)'s and (a)(2)'s respective robbery offenses, the "Court may use the modified categorical approach in order to determine which elements formed the basis of Walker's conviction."  (Cv. ECF No. 23 at 122.)  The Government notes that a Texas grand jury charged that Walker, on September 21, 1981, "while in the course of committing theft and with intent to obtain and maintain control of the property" of his victim, "did then and there knowingly and intentionally cause bodily injury" to the victim "by pushing [him] to the ground."  (Cv. ECF No. 23-3 at 134.)

41

Walker's record of judgment shows that he pled guilty to this charged offense. (Cv. ECF No. 23-4 at 135.) The Government contends (1) that Walker's Shepard documents confirm that Walker was convicted under § 29.02(a)(1) for robbery with bodily injury and (2) that a § 29.02(a)(1) offense is categorically a violent felony under the ACCA's use-of-force clause. (Cv. ECF No. 23 at 123-24.) The Government argues that McMurray has no bearing on Walker's conviction because Walker's indictment shows that Walker was convicted of "knowing[] and intentional[]" robbery, not robbery committed recklessly.[13] (Id. at 128.)

The Court may examine Walker's Shepard documents to determine under which of § 29.02(a)'s provisions Walker was convicted because the statute and Texas decisional law define robbery in terms of two alternative offenses. To that end, Walker's Shepard documents confirm that he was convicted under § 29.02(a)(1) for robbery with bodily injury.

---

[13] The Government does not explicitly argue, but nevertheless suggests, that McMurray has been undermined by Voisine v. United States, 136 S. Ct. 2272 (2016). (Cv. ECF No. 23 at 125-27.) The Government states that recent Supreme Court authority, including Voisine, "makes clear . . . that the intentional, knowing, or reckless causation of bodily injury necessarily involves the use of force." (Id. at 125.) Voisine addressed whether 18 U.S.C. § 922(g)(9), which makes it a crime for anyone who has been convicted of a "misdemeanor crime of domestic violence" to possess a firearm, extends to misdemeanor assault convictions based on reckless conduct. 136 S. Ct. at 2276. Voisine held that it does. Id. at 2282. Courts in this Circuit, however, have rejected the argument that Voisine has undermined McMurray's holding that crimes committed recklessly cannot qualify as ACCA predicates under the ACCA's use-of-force clause. E.g., United States v. Wehunt, ___ F. Supp. 3d ___, No. 1:16-cr-17-1, 2017 WL 347544, at *2 (E.D. Tenn. Jan. 24, 2017).

The Court may examine <u>Shepard</u> documents to rule out that Walker's conviction was based on reckless conduct only if § 29.02(a)(1), which criminalizes "intentionally, knowingly, or recklessly caus[ing] bodily injury to another," lists alternative mental state elements rather than alternative means of satisfying a single mental state element. If "means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." <u>Mathis</u>, 136 S. Ct. at 2256.[14] The Government cites no authority that "intentionally, knowingly, or recklessly" lists alternative elements rather than means under § 29.02(a)(1) or that the Court may treat those mental state terms within § 29.02(a)(1) as alternative elements simply because § 29.02(a)(1) is divisible from § 29.02(a)(2).

Under Texas law, the elements of robbery with bodily injury under § 29.02(a)(1) are: "(1) a person (2) in the course of committing theft (3) with intent to obtain or maintain control of property (4) intentionally, knowingly or recklessly (5) causes bodily injury to another." <u>Walton</u>, 575 S.W.2d at 25 n.1 (quotation marks omitted). The fourth element -- "intentionally, knowingly or recklessly" -- is the culpable mental state element for the fifth element. See <u>Ex parte</u>

---

[14] <u>Mathis</u> noted the possibility that a statute which criminalizes "intentionally, knowingly, or recklessly" committing a prohibited act may list "interchangeable means of satisfying a single *mens rea* element." 136 S. Ct. at 2253 n.3 (discussing Texas's assault statute, Tex. Penal Code § 22.01(a)(1)).

<u>Santella</u>, 606 S.W.2d 331, 331-33 (Tex. Crim. App. 1980) (en banc) (discussing § 29.02 elements as included elements of an aggravated robbery offense).

In <u>Landrian v. State</u>, the Texas Court of Criminal Appeals discussed Texas's assault statute (to which <u>Mathis</u> alluded) in reviewing a Texas aggravated assault conviction. 268 S.W.3d 532 (Tex. Crim. App. 2008). Under Texas law, a person commits assault if that person "intentionally, knowingly, or recklessly causes bodily injury to another" or "intentionally or knowingly threatens another with imminent bodily injury." Tex. Penal Code § 22.01(a)(1)-(2).[15] A person commits aggravated assault where that person commits assault and engages in conduct that qualifies as one of two statutory aggravating factors. <u>See</u> Tex. Penal Code § 22.02(a); <u>Landrian</u>, 268 S.W.3d at 536-37. In <u>Landrian</u>, the court addressed whether the trial court erred in instructing the jury on defendant's aggravated assault charge where the jury instructions, <u>inter alia</u>, did not require the jury to unanimously agree as to whether the defendant had caused bodily injury "intentionally or knowingly" or "recklessly." 268 S.W.3d at 534 & n.5.

<u>Landrian</u> explained that, under Texas law, although a "jury must agree that the defendant committed one specific crime," a

---

[15] A third form of assault is offensive or provocative contact. <u>See</u> Tex. Penal Code § 22.01(a)(3).

jury is not required to "unanimously find that the defendant committed that crime in one specific way." Id. at 535. It noted that "[t]he gravamen of the offense of aggravated assault is the specific type of assault defined in Section 22.01," and "the *actus reus* for 'bodily injury' aggravated assault is 'causing bodily injury.'" Id. at 537. Landrian noted that, under the assault statute's bodily-injury provision, "any of three culpable mental states suffices: intentionally, knowingly, or recklessly causing bodily injury." Id. Addressing the legal significance of those mental states, the court explained:

> The legislature was apparently neutral about which of these three mental states accompanied the forbidden conduct because all three culpable mental states are listed together in a single phrase within a single subsection of the statute. There is no indication that the legislature intended for an "intentional" bodily injury assault to be a separate crime from a "knowing" bodily injury assault or that both of those differ from a "reckless" bodily injury assault. All three culpable mental states are strung together in a single phrase within a single subsection of the statute. All result in the same punishment. They are conceptually equivalent.

Id. The court noted that Texas courts traditionally had not required jury unanimity on mental state where multiple mental states were applicable:

> Because the Penal Code explicitly states that proof of a greater culpability is also proof of any lesser culpability, it would not matter, for example, if six members of a jury found that the defendant intentionally killed his victim and six members found that he had knowingly killed his victim.

Id.  The court reasoned that "[t]he same is true with 'bodily injury' assault."  Id. at 537-38.

Following Mathis, in Gomez-Perez v. Lynch, the Fifth Circuit cited Landrian and concluded that the clause "intentionally, knowingly, or recklessly" as used in Texas's assault statute lists alternative mental state means, not elements.  829 F.3d 323, 325 (5th Cir. 2016).  The court explained: "Texas law has definitively answered the 'means or elements' question: the three culpable mental states in section 22.01(a)(1) are 'conceptually equivalent' means of satisfying the intent element, so jury unanimity as to a particular one is not required."  Id. at 328 (citing Landrian, 268 S.W.3d at 537).

Although Mathis, Landrian, and Gomez-Perez addressed Texas's assault statute, those authorities strongly suggest that the "intentionally, knowingly, or recklessly" clause in Texas's robbery statute likewise lists alternative means, not elements, of satisfying the culpable mental state element for robbery with bodily injury.  Like § 22.01(a)(1), § 29.02(a)(1) provides that a person commits an offense who "intentionally, knowingly, or recklessly causes bodily injury to another."  Tex. Penal Code §§ 22.01(a)(1), 29.02(a)(1).  As in its assault counterpart, in § 29.02(a)(1), "all three culpable mental states are listed together in a single phrase within a single subsection of the statute."  Landrian, 268 S.W.3d at 537.  Like its assault

46

counterpart, "[a]ll" of § 29.02(a)(1)'s mental states "result in the same punishment." Id.; see Tex. Penal Code § 29.02(b) (making any offense under § 29.02 a second degree felony); cf. Mathis, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, . . . they must be elements."). Landrian did not limit its discussion or analysis of alternate mental state terms to Texas assault. Although decided after Walker's 1982 robbery conviction, Landrian did not purport to announce a new rule governing mental state elements for criminal offenses. Mathis, Landrian, and Gomez-Perez preclude examination of Walker's Shepard documents to rule out that his robbery conviction was based on reckless conduct.

The parties disagree about whether § 29.02(a)(1) is overbroad for other reasons. The Court need not decide those issues. Because a § 29.02(a)(1) conviction could be based on reckless conduct and § 29.02(a)(1)'s mental state element is indivisible, Walker's 1982 Texas conviction for robbery is no longer a violent felony under the ACCA after Johnson.

### 4. Johnson Relief

Because Walker no longer has at least three ACCA-predicate offenses after Johnson, he no longer qualifies as an armed career criminal under the ACCA. Walker is entitled to be relief under Johnson. On this ground only, the § 2255 Motion is GRANTED.

## IV. Conclusion

For the foregoing reasons, the § 2255 Motion is GRANTED in part and DENIED in part. The § 2255 Motion is GRANTED on the basis of Walker's Johnson challenge. Because Walker is entitled to relief under Johnson, the judgment in Criminal Case No. 07-20243 is VACATED, and the matter will be set for resentencing. The Probation Office is directed to prepare a Supplemental Presentence Investigation Report. The parties may file position papers once the Report has been prepared. The § 2255 Motion is DENIED on all other grounds.

This order is an "order granting a future resentencing" and "does not complete the § 2255 proceeding[s]." United States v. Hadden, 475 F.3d 652, 662 (4th Cir. 2007). Upon resentencing and entry of a new judgment in Criminal Case No. 07-20243, the Court will enter judgment in these § 2255 proceedings. See generally id. at 659-666 (discussing appealability of orders in § 2255 proceedings granting in part and denying in part the § 2255 motion); Ajan v. United States, 731 F.3d 629, 631-32 (6th Cir. 2013) (citing Hadden approvingly).


So ordered this 20th day of April, 2017.

/s/ Samuel H. Mays, Jr
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE